UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAKAYLA HERNANDEZ,  as the    )
Personal Representative of the    )
Estate of ROSE MARIE    )
HERNANDEZ,    )
    )
        Plaintiff,    )
    )   Case No. 8:20-CV-02409-CEH-JSS
   vs.    )
    )
AUROBINDO  PHARMA  USA,  INC.  )
and CVS PHARMACY, INC.,    )
    )
       Defendants.

## CVS PHARMACY, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c), INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF, AND REQUEST FOR ORAL ARGUMENT

Defendant CVS Pharmacy, Inc. ("CVS") respectfully requests the Court dismiss the Complaint brought by Makayla Hernandez, as the Personal Representative of the Estate of Rose Marie Hernandez ("Plaintiff"). Having filed its Answer, CVS now moves pursuant to Federal Rule of Civil Procedure 12(c) and requests the Court enter judgment in favor of CVS, dismiss the Complaint with prejudice, and enter all other just and proper relief.

## INTRODUCTION

Plaintiff seeks to hold defendant CVS Pharmacy, Inc. liable for doing nothing more than properly dispensing a blood pressure medication approved by the U.S. Food and Drug Administration ("FDA") to Rose Marie Hernandez ("Decedent") pursuant to physician order. Plaintiff claims that CVS dispensed Decedent her first prescription of the medication—generic losartan—on or about April 18, 2019, that Decedent then ingested the medication on or about April 20, 2019, and died of respiratory shock the next day. Plaintiff now seeks to hold CVS liable as the dispensing pharmacy under theories of strict liability and negligence for failing to warn Decedent of the risk of respiratory shock.

Plaintiff fails to state a viable claim against CVS for several reasons. First, Plaintiff's claims against CVS are preempted. Under federal law and regulations, CVS is prohibited from altering or augmenting the warnings for losartan in any way. Because Plaintiff seeks to hold CVS liable for failure to warn of the risks of taking generic losartan, and because federal law prohibits CVS from doing so, Plaintiff's claims conflict with federal law and should be dismissed with prejudice. Second, Plaintiff's Complaint, which relies on a theory that CVS failed to identify and warn of a latent defect—the risk of respiratory shock—in the losartan dispensed to Decedent, also fails to state a claim for strict liability or negligence under Florida law. Numerous cases hold that pharmacies such as CVS cannot be held liable in strict liability or negligence for failing to warn of the risk of adverse events in patients taking an FDA-approved prescription drug. Plaintiff's claims

against CVS are no different. <u>Finally</u>, because Plaintiff's strict liability and negligent failure to warn claims fail, Plaintiff's derivative claim for wrongful death also should be dismissed.

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

Plaintiff in this case filed suit against Defendant Aurobindo Pharma USA, Inc. ("Aurobindo") and CVS on September 21, 2020, alleging that Decedent took the prescription drug losartan and died the next day of respiratory shock. Losartan is a generic prescription medication indicated for the treatment of blood pressure.

Plaintiff alleges that Decedent's prescription for generic losartan was manufactured by Aurobindo. *See* Compl. [DE 1-1] ¶¶ 7-8. In response, Aurobindo admits that it markets and distributes prescription losartan but denies manufacturing losartan. *See* Aurobindo Answer [DE 17] ¶¶ 7-8. In contrast, Plaintiff alleges only that CVS dispensed losartan to Decedent pursuant to physician's orders by a pharmacist at a CVS Pharmacy. *See* Compl. ¶¶ 12, 18, 87. Consistent with the Complaint, CVS admits that there are CVS retail pharmacies in Florida, including the one alleged in the Complaint, but lacks knowledge as to whether Decedent filled a prescription for losartan with CVS. *See* CVS Answer [DE 32] ¶¶ 12, 18, 87.

Plaintiff brings claims for breach of implied warranty, strict liability (failure to warn), negligent failure to warn, and wrongful death against Aurobindo. *See* Compl., Counts I-V. Against CVS, Plaintiff brings claims for strict liability (failure to warn), negligent failure to warn, and wrongful death. *See id.*, Counts VI-VIII.

Specifically, with respect to the claims against CVS, Plaintiff alleges that the defects in the prescription drug losartan were latent and "not readily apparent," that CVS failed to warn Decedent of the risk of taking losartan, and that CVS failed to adequately test the drugs to detect that risk. *See id.* ¶ 81 ("The defects in the Losartan HCTZ 50-12.5 mg oral tablets were latent and not readily apparent to Decedent . . . ."); *id.* ¶ 87.

In November 2020, Defendants moved the Judicial Panel on Multi-District Litigation ("JPML") to transfer this case to a pending multidistrict litigation involving the generic drugs valsartan, losartan, and irbesartan. *See* Defs.' Mot. [DE 609], *In Re: Valsartan, Losartan, and Irbesartan Products Liability Litigation* MDL No. 2875 (JPML Nov. 4, 2020). Plaintiff opposed the transfer, arguing to the JMPL that Plaintiff's case "does not deal with the inclusion of carcinogens in the drug [losartan], but **rather deals with the warnings provided regarding the risk of the individual to go into respiratory shock after ingestion**." *See* Pl. Response [DE 619], MDL No. 2875 (JPML Nov. 23, 2020) (emphasis added), attached as Exhibit A. Following briefing by the parties, on February 5, 2021, the JPML denied transfer, finding:

> Unlike the actions in MDL No. 2875, *Hernandez* does not allege that the losartan ingested by the decedent contained nitrosamine impurities or an injury allegedly linked to nitrosamines. Instead, plaintiff alleges that the decedent suffered respiratory shock and died shortly after ingesting losartan for the first time **and that the boxed warnings on the product failed to provide adequate warning of these risks**. The *Hernandez* complaint has no express or implied reference to the presence of impurities of any kind in the losartan ingested by decedent** or

suggest that her injuries were linked to the presence of nitrosamines.

JPML Order [DE 628], MDL No. 2875 (JPML Feb. 5, 2021) (emphasis added), attached as Exhibit B. In other words, because Plaintiff's claims depend solely on the adequacy of the warnings on the losartan ingested by Plaintiff, the JPML determined that transfer to MDL 2875 was unwarranted, and that the case should proceed in this Court.

On November 5, 2020 and March 8, 2021, Aurobindo and CVS filed their respective answers to Plaintiff's complaint. DE 17 and 32. Accordingly, the pleadings are closed, and CVS now moves for judgment on the pleadings on the grounds set forth herein.

## STANDARD OF REVIEW

Judgment pursuant to Rule 12(c) is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). The standard for granting a Rule 12(c) motion on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss. *See Valerie's House, Inc. v. Avow Hospice, Inc.*, 2019 WL 7293596, at *1 (M.D. Fla. Dec. 27, 2019); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examined [the complaint] under Rule 12(b)(6) or Rule 12(c), the question was the same: whether the count stated a claim for relief."). In evaluating whether dismissal is warranted, the Court accepts as true

all material facts alleged in the non-moving party's pleading, and views those facts in the light most favorable to the non-moving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). The Court, however, need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## ARGUMENT

## I.   Plaintiff's Claims Against CVS are Preempted by Federal Law.

The gravamen of Plaintiff's claims against CVS is that CVS allegedly failed to warn of the alleged risk of respiratory shock in patients consuming losartan. The losartan at issue in this case, however, is an FDA-approved prescription medication subject to strict regulation under federal law, including the FDA regulations governing the warnings and labeling of FDA-approved generic prescription drugs. *See infra* at 7-10; *see also Aurobindo Brief* [DE 35] at 8-10. Pursuant to that federal regulatory scheme, only the holder of the New Drug Application ("NDA") for the branded version of losartan has authority to change the labeling of the drug—including by adding or altering the warnings regarding the risk of taking the drug. As the alleged dispensing pharmacy, however, CVS is not the NDA holder, or a manufacturer of losartan at all, and therefore is federally prohibited from changing, altering, or adding to the FDA-approved warnings for losartan. Because each of Plaintiff's claims attempt to hold CVS liable for

something it could not legally do, Plaintiff's claims against CVS are preempted by federal law, and the Complaint should be dismissed with prejudice.[1]

**A.    Federal law provides that only the NDA holder may revise the labeling of a prescription drug.**

Because Plaintiff's claims against defendants concern the labeling of and warnings for losartan, a prescription pharmaceutical drug, federal law and regulations governing the labeling of the drug bear on the viability of Plaintiff's claims.

**1.    Federal law and regulations strictly limit who may revise the labeling for an FDA-approved prescription drug.**

Prior to selling any new brand-name drug, the manufacturer of the drug must first obtain the FDA's approval by submitting an NDA, which compiles materials concerning the drug, including any "data or information relevant to an evaluation of the safety and effectiveness of the drug[.]" 21 C.F.R. §§ 314.50(d)(2), (5)(iv); *see also* 21 U.S.C. § 355(b)(1)(A) (clinical investigations). The NDA also must include the applicant's proposed labeling for the drug. 21 U.S.C. § 355(b)(1)(F); 21 C.F.R. § 314.50(c)(2)(i).

Once the FDA has approved a drug for sale and marketing in the United States, the labeling and warnings for the drug must always contain the exact language proposed to and approved by the FDA in its review of the product's NDA.

---

[1] In addition to the arguments set forth below, CVS also incorporates and adopts the arguments regarding preemption made by Co-Defendant Aurobindo in its separate motion for judgment on the pleadings [DE 35].

*See* 21 U.S.C. § 355; 21 C.F.R. § 314.105(b); *Wyeth v. Levine*, 555 U.S. 555, 568 (2009) (citing same). Any departure from the exact language approved by the FDA renders a product unlawfully misbranded under the FDCA. 21 U.S.C. § 352(a), (f)(1); *see also O'Neal v. Smithkline Beecham Corp.*, 551 F.Supp. 2d 993, 996 (E.D. Cal. 2008) (citing 21 U.S.C. § 321(n)); 21 U.S.C. §§ 352(a), (f)(1); 21 C.F.R. § 201.100(c)(1)) (explaining that failure to use the FDA-approved labeling renders a drug unlawfully "misbranded"). This includes any change to the product's warnings, or to any related promotional or informational materials accompanying the drug. 21 C.F.R. § 314.70(b)(2)(v)(A); 21 U.S.C. § 321(k), (m) (defining "labeling" to include all written, printed, or graphic material upon a drug, or accompanying the drug); 21 C.F.R. § 314.70(a)(4) (requiring that all promotional labeling and advertising remain consistent with the contents of the product labeling).

### 2. Federal law requires that the labeling for generic drugs be identical to that of the branded equivalent.

As with their branded counterparts, generic drugs also are subject to strict regulation pursuant to federal law and FDA regulations. Pursuant to the 1984 Hatch Waxman Act, Pub. L. No. 98-417, 98 Stat. 1585 (codified at 21 U.S.C. § 355(j), 35 U.S.C. §§ 156, 271, 281), which establishes the framework for all generic prescription drugs available today, drug companies that seek to market generic versions of any previously approved branded drug must file an Abbreviated New Drug Application ("ANDA"). The ANDA contains data establishing for the FDA

that the generic product is the chemical and biological equivalent of the branded version (also known as the "reference listed drug"). *See PLIVA v. Mensing*, 564 U.S. 604, 612 (2011) (discussing the generic approval process) (citing 21 U.S.C. § 355(j)(2)(A); *see also Aurobindo Brief* at 9-10.

Just as the generic drug must be identical to the reference listed drug, so must the labeling for the generic drug be identical to its branded equivalent. *Mensing*, 564 U.S. at 612-13. Federal law defines "labeling" broadly to include the warnings and other information on the drug's packaging, any inserts or information distributed with the drug at the point of sale, and any supplemental information provided that explains the product. *Id.* An entity—including any generic drug manufacturer or other entity selling the drug—who makes unilateral alterations to the product's label renders the drug misbranded, and could be subject to criminal and civil penalties under federal law. 21 U.S.C. § 352(a). Moreover, the failure of the generic version to match the reference listed drug in any way is grounds for the FDA withdrawing its approval of the drug. *See Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 477 (2013); *Mensing*, 564 U.S. at 618.[2]

In other words, because only the NDA holder may change the labeling of a product, CVS, which is not the NDA holder and is only a pharmacy that dispenses

---

[2] Indeed, FDA regulations permit the FDA to withdraw approval for a drug *whenever* the labeling "is no longer consistent with" the branded label, and the FDA will notify not only an ANDA holder, but "all other persons who manufacture or distribute" the drug if a drug's labeling is inconsistent with the branded label. 21 C.F.R. § 314.150(b)(10)

many medications to patients pursuant to physician instruction, is federally prohibited from altering the labeling and/or warnings of the losartan it dispenses.

**3.   Plaintiff's claims against CVS conflict with and are preempted by federal law.**

Pursuant to the Supremacy Clause of the United States Constitution, "any state law that interferes with, or is contrary to, federal law is preempted." *Estrada v. Becker*, 917 F.3d 1298, 1302 (11th Cir. 2019) (citation and internal quotations omitted). Where a plaintiff's claims require a defendant to act in violation of federal law to avoid liability under state law, the plaintiff's claims conflict with federal law and are preempted. *Bartlett*, 570 U.S. at 475 (state claims that "require a private party to violate federal law are preempted and, thus, are 'without effect'"); *Mensing*, 564 U.S. at 617-18 (same); *see also Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019). Because Plaintiff, in asserting her claims, seeks to hold CVS liable for conduct which federal law prohibits, Plaintiff's claims are preempted by federal law.

**a.   Federal law preempts claims against non-NDA holders relating to the design or labeling of a generic drug.**

As numerous federal courts, including the Supreme Court, have recognized, in the context of generic drugs, product liability claims asserted against defendants who are not the NDA holders for the reference listed drug are preempted because those defendants cannot alter, revise, or augment the warnings for the drug. *See Mensing*, 564 U.S. at 625-26 (finding failure to warn claims against a generic

manufacturer preempted). Nor can those defendants alter the design of the drug, the components of the drug, or the biological mechanism of the drug, including how it performs in a patient upon ingestion. *See Bartlett*, 570 U.S. at 475-76 (finding design-defect claims, and claims that the drug should never have been sold in the first place, preempted by federal law).

Following suit, in the years since the Supreme Court ruled in *Mensing* and *Bartlett*, *supra*, numerous federal Courts of Appeals have broadly held that state-law claims such as those asserted in this case are preempted by *Mensing*/*Bartlett* if they touch on the design, warnings, or labels of a generic drug, and where plaintiffs would seek to impose liability for the defendant's failure to change the labeling or design of the drug in some way. *See, e.g.*, *In re Darvocet*, 756 F.3d 917, 932-33 (6th Cir. 2014) (concluding that a claim that generic drug manufacturers should have sent letters explaining safety risks to medical providers was preempted because, "if generic drug manufacturers, but not the brand-name manufacturer, sent such letters, that would inaccurately imply a therapeutic difference between the brand and generic drugs and thus could be impermissibly misleading") (internal quotation omitted); *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1249 (11th Cir. 2013) ("Because each of Guarino's claims against Teva is premised upon an allegedly inadequate warning, they are all preempted by federal law."); *Morris v. PLIVA, Inc*., 713 F.3d 774, 778 (5th Cir. 2013) (concluding that "[a]ny state law-based holding that the generic manufacturers should have acted differently with respect to warnings" is preempted). The reasoning underpinning

each of these decisions is the same: Any such claims would violate the "duty of sameness" that non-NDA holders owe under the FDCA. *See Guarino*, 719 F.3d at 1249 ("[G]eneric manufacturers operate under a 'duty of sameness,' which requires that their labels be at all times identical to the brand-name label of the same drug.").

Moreover, federal law preempts these claims regardless of the form of the pleadings, or the specific cause of action pleaded. *See Bartlett*, 570 U.S. at 475-76 (dismissing state-law strict liability "design-defect" claims as preempted because they, in effect, required the manufacturers to alter a drug's composition or labels); *Guarino*, 719 F.3d at 1249 (dismissing state-law negligence claim because it was premised upon an allegedly inadequate warning). Where a claim, whether pleaded as strict liability or negligence, would impose liability for the defendant's failure to alter or augment the design or warnings of a drug, the claims are preempted because federal law prohibits the defendant from doing so. *See Guarino*, 719 F.3d at 1249 (finding claims alleging inadequate warnings are preempted "[n]o matter the garb in which" they are presented).

Similarly, a plaintiff cannot avoid preemption by attempting to repackage what is, ultimately, a design or failure to warn claim as a claim premised on some other conduct or omission. For example, and as is relevant in this case, several courts have recognized that "failure to test" or "failure to report" claims cannot survive under the *Bartlett/Mensing* analysis because they are not standalone claims but are, rather, allegations that relate to the broader claim that the

defendant either failed to warn of whatever risk that testing allegedly would have revealed, or that the design was defective in a way that additional testing might have revealed. Either way, the claims are preempted. *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 477 (4th Cir. 2014) ("If we assume that under Maryland law there is a general duty to protect consumers from injury based on the negligent marketing and sale of a product, it is clear that a generic drug manufacturer whose product is unreasonably dangerous as sold could not satisfy that duty without changing its warnings, changing its formulation, exiting the market, or accepting tort liability. Therefore, [plaintiff's] negligence claims are preempted by impossibility."); *Morris*, 713 F.3d at 778 (failure to test and inspect allegations are "yet another attempt to circumvent disfavored failure-to-warn claims" and also fail under *Mensing* principles); *see also Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1126 (D. Or. 2012); *Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md. 2011).

### b. The *Bartlett/Mensing* analysis applies with equal force to claims against pharmacies.

Preemption under *Mensing/Bartlett* applies equally, if not more so, to downstream entities, like CVS, because pharmacies have no more authority under the FDCA than generic manufacturers to alter a drug's label or warnings. Thus claims against pharmacies that rely on a theory that the pharmacy failed to warn of the risks of taking a drug conflict with federal law and are preempted.

Two recent federal decisions out of Florida confirm that federal law preempts Plaintiff's claims against CVS in this case. Most recently, Judge

Rosenberg, presiding over the Zantac MDL, dismissed <u>with prejudice</u> all state-law claims against pharmacies based upon the drug's allegedly defective design, labels, and warnings. The Court found that dismissal was warranted under a straightforward application of the Supreme Court's decisions in *Bartlett* and *Mensing* because pharmacies "have no ability to alter a label or alter a drug's design[.]" *In re Zantac (Ranitidine) Prod. Liab. Litig.*, -- F. Supp. 3d -- , No. 20-MD-2924, 2020 WL 7864585, at \*13 (S.D. Fla. Dec. 31, 2020) (Rosenberg, J.). In reaching this conclusion, Judge Rosenberg detailed how courts have refused to allow claims against non-NDA holders for failure to communicate information to consumers or medical providers, failure to conduct testing of a drug, or any other theory that is functionally a failure to warn or design defect claim. *See id.* (citing, *inter alia*, *In re Darvocet*, 756 F.3d at 932-33; *Morris*, 713 F.3d at 777). Put simply by Judge Rosenberg: "[C]ourts dismiss design and label-based claims against any defendant that is powerless to alter a design or alter a label." *Id.*[3]

Similarly, Judge Gayles of the Southern District of Florida recently ruled that similar claims against a distributor of a generic prescription drug were preempted because the distributor—like a pharmacy or a generic manufacturer—

---

[3] In this case, Plaintiff disclaimed any theory other than design- and label-based liability in opposing transfer to MDL 2875. *See* Pl. Response, Ex. A at 3 (arguing that Plaintiff's claim deals solely with "the warnings provided regarding the risk" of the losartan consumed by Decedent); *see also* JPML Decision, Ex. B at 2 (noting that Plaintiff asserts only that the "warnings on the product failed to provide adequate warnings of" the risk of respiratory shock). In Plaintiff's own words, Plaintiff's claims depend solely on a failure-to-warn theory of liability, which is squarely preempted under *Mensing* and *Bartlett*. *Cf. In re Zantac*, 2020 WL 7864585, at \*19 (only allowing negligent storage theories to move forward so long as they did not relate to the labeling or design of ranitidine).

could not alter the label of the drug at issue in the case. *See Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1165-66 (S.D. Fla. 2020). In *Smith*, the plaintiff argued that the court should not dismiss the distributor because the distributor was a corporate affiliate of the NDA holder.  But the court rejected this argument, ruling that "the FDA's regulations nowhere contemplate a distributor of a brand drug, albeit a distributor closely affiliated with the NDA holder, initiating changes to an approved NDA." *Id.* Judge Gayles found "no reason to depart from the wealth of authority clearly stating that a company that does not hold an NDA, regardless of its connection to the NDA holder, is powerless to submit label changes to the FDA." *Id.* at 1166.

Further, other federal courts have found *Mensing/Bartlett* clearly preempt labeling defect of design defect claims against pharmacies. *See, e.g., In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 2016 WL 7368203, at *2 (D.S.C. Nov. 1, 2016) (reasoning that "a pharmacy also has no authority to unilaterally change a drug's label" and thus, any claims against the pharmacy based on the label are preempted); *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1142 (N.D. Ill. 2019) (dismissing claims against retail seller of over-the-counter drug on preemption grounds).

Taken together, these cases clearly establish that the relevant inquiry under the *Mensing/Bartlett* analysis is not what type of *entity* the defendant is (*e.g.*, manufacturer, distributor, pharmacy), but rather, whether the defendant holds an NDA and *can make changes* to the drug's warnings or design. *See Greager*, 414 F.

Supp. 3d at 1142 (noting the "key distinction in the relevant regulatory structure and case law is not between prescription and non-prescription drugs but between NDA holders and ANDA holders" and dismissing all claims relating to an over-the-counter drug against both the generic manufacturer and the retailer, including claims for design defect and failure to warn). Indeed, it would make little sense to find that *Mensing* precludes failure-to-warn claims against a generic manufacturer—because it is powerless to change the label—only to find that a pharmacy should have somehow compelled the manufacturer (whether branded or generic) to make a change or tried to unilaterally change the FDA-mandated label on its own. *In re Zantac*, 2020 WL 7864585, at *13 (reasoning that pharmacies "have no ability to alter a label or alter a drug's design").

Under the foregoing precedent, all of Plaintiff's claims against CVS should be dismissed with prejudice. As acknowledged by Plaintiff in her own Complaint, here, CVS is a mere dispensing pharmacy. *See* Compl. ¶¶ 12, 18, 87. CVS is not the NDA holder, is not a manufacturer of losartan, and is not the entity responsible under FDA regulations for the design, manufacture, and labeling of the drug. *See supra* at 3 (discussing Plaintiff's allegations concerning CVS). As such, federal law prohibited CVS from altering or augmenting the design or labeling of losartan in any way—including by altering or augmenting the drug's warnings—and Plaintiff cannot attempt to hold CVS liable for failing to provide Decedent or her physician with additional warnings regarding the risk of taking losartan.

## II.     Plaintiff's Claims Against CVS also Fail Under Florida Law.

In addition to being preempted, Plaintiff also fails to state a viable claim against CVS under Florida law, such that CVS should be dismissed from the case with prejudice. Specifically, Florida law recognizes that pharmacies like CVS are uniquely positioned and are different from the typical "seller" of a product, such that Plaintiff's strict liability (Count VI) and negligent failure-to-warn (Count VII) claims cannot lie under the circumstances pleaded in Plaintiff's complaint. Further, because Plaintiff's wrongful death claim (Count VIII) is derivative in nature, dismissal of Counts VI and VII necessitates dismissal of Count VIII.

### A.     Florida law does not recognize claims for strict liability against pharmacies for latent defects in the drugs they dispense.

Under Florida law, pharmacies cannot be held strictly liable for latent defects in the drugs they dispense. *See McLeod v. W.S. Merrell Co.*, 174 So. 2d 736, 739 (Fla. 1965) ("The concept of strict liability should not be applied" to pharmacies).[4] The rule, first set forth in the Florida Supreme Court's decision in *McLeod v. W.S. Merrell Company*, *supra*, acknowledges the fundamental

---

[4] Florida is not alone in this conclusion; courts across the country have consistently reached the same conclusion. *See, e.g.*, *Jones v. Irvin*, 602 F. Supp. 399, 400 (S.D. Ill. 1985) ("Recent cases have uniformly held that a pharmacist is not strictly liable under a products liability theory since he is not a retailer."); *Herzog v. Arthrocare Corp.*, 2003 WL 1785795, at *13 (D. Me. Mar. 21, 2003) ("[C]ase law generally immunizes pharmacists from strict liability because they are not the kind of 'retailers' that strict liability regimes are designed to target. Pharmacists are equally, if not more significantly, service providers." (citation omitted)); *Orr v. Wyeth-Ayerst Labs.*, No. CV-98-3000, 1999 WL 33548162, at *1 (Ala. Cir. Ct. Aug. 2, 1999) (granting motion to dismiss pharmacies because "[t]he overwhelming weight of authority from the courts that have considered this precise issue hold that no cause of action, be it strict liability, negligence or breach of warranty, will lie"); *Batiste v. Am. Home Prods. Corp.*, 231 S.E.2d 269, 275-76 (N.C. Ct. App. 1977) ("strict liability without fault should not be applied to the prescription druggist").

differences between the role of a retail pharmacy and a prescribing physician. In *McLeod*, the Court considered "whether a retail druggist who properly fills a prescription . . . with an unadulterated drug" could be held liable if "the drug produces harmful effects" on the patient. *Id.* at 737 (considering this issue in the context of a claim for breach of the implied warranty of merchantability). The Supreme Court held that the pharmacy could not be held liable without fault, whether characterized as a claim for breach of implied warranty or under a strict liability framework, because doing so would inappropriately "convert the retail prescription druggists into insurers of the safety of the manufactured drug"—an outcome that the Court deemed was inappropriate under Florida law. *Id.* at 738 ("The concept of strict liability without fault should not be applied to the prescription druggists.").

Since the *McLeod* decision, courts applying Florida law have applied its reasoning, and noted specifically that, in the context of claims involving the risks of a given drug, it is the physician—not the pharmacist—who selects the drug, has knowledge of its risks, and makes the judgment that the patient should take the drug. *See Pysz v. Henry's Drug Store*, 457 So. 2d 561, 562 (Fla. Dist. Ct. App. 1984) ("[I]t is the physician who has the duty to know the drug that he is prescribing and to properly monitor the patient."); *see also Clay v. Wyeth*, 2004 WL 7330338, at *11 (M.D. Fla. Aug. 17, 2004) (Jones, J.) ("Florida courts hold drug manufacturers strictly liable for defective prescriptive drugs . . . [but] they have refrained from applying the doctrine to prescription druggists.").

18

In this case, Plaintiff alleges that the losartan dispensed to Decedent contained a latent defect—specifically, that ingestion of the drug was accompanied by a risk of respiratory shock that was not adequately warned of on the losartan label. Compl. ¶ 81. Accordingly, pursuant to the Court's reasoning in *McLeod* and the other decisions that have followed, Plaintiff cannot sustain her strict liability claim (Count VI) against CVS for CVS's alleged failure to warn of the latent defect, and the claim should be dismissed with prejudice.

**B.   Plaintiff also fails to plead a negligence claim against CVS because CVS had no duty to warn of the potential adverse reactions from taking losartan.**

Plaintiff's claim that CVS was negligent in its failure to warn Decedent regarding the risk of adverse reaction to losartan also fails under Florida law, and should be dismissed with prejudice.

Under Florida law, a pharmacy owes customers no duty to warn of potential adverse drug reactions or risks of ingesting a drug. *See Johnson v. Walgreen Company*, 675 So. 2d 1036, 1038 (Fla. Dist. Ct. App. 1996) (holding that a general duty to warn was not recognized by Florida statute or precedent). Rather, as discussed above, it is the physician who has the duty to select a drug for the patient, and the manufacturer of the drug that bears responsibility to warn of known adverse reactions or risks of consumption. *See supra* at 18; *see also Bustetter v. Armor Corr. Health Servs.*, 919 F. Supp. 2d 1282, 1294-95 (M.D. Fla. 2013) (Bucklew, J.) ("[T]he patient's doctor is in the best position to select the appropriate medication for each patient's circumstances (after weighing the risks

and benefits of the medication) and to monitor the effectiveness of the medication.").

Courts applying Florida law routinely dismiss claims where they depend on a theory that the pharmacy failed to warn the patient prior to dispensing the medication. *See Layton v. Smithkline Beecham Corp.*, 2006 WL 2194498, at *2 (M.D. Fla. Aug. 2, 2006) (Whittemore, J.) (plaintiffs cannot assert a negligence claim "premised on a duty to warn customers of potential adverse drug interactions nor of the dangerous propensities of a particular prescription drug"); *see also Bailey v. Janssen Pharmaceutica, Inc.*, 2006 WL 3665417, at *4 n.2 (S.D. Fla. Nov. 14, 2006) ("[P]harmacies do not have a general duty to warn a patient of any potential adverse reactions to the prescription, absent specialized knowledge of the patient's medical history.").

Plaintiff's negligence claim against CVS falls squarely within the scope of these prior decisions. Plaintiff alleges that the generic losartan ingested by Decedent presented an undisclosed and/or inadequately warned of risk of respiratory failure, and that CVS was negligent in failing to advise Decedent of this risk. *See* Compl. ¶¶ 87-92. Because Florida law does not recognize such a duty on CVS in these circumstances, the claim should be dismissed with prejudice.

CVS anticipates that Plaintiff may attempt to argue that the negligence claim should proceed, relying on a very narrow exception to the general rule left open by the Florida Supreme Court's decision in *McLeod*. In *McLeod*, the Court acknowledged that a negligence claim against a pharmacy might lie where it is

based on the pharmacist's warranty that "he has used due and proper care in filling the prescription" for Plaintiff. *See McLeod*, 174 So. 2d at 739. Since that decision, in very limited circumstances, Florida courts have allowed negligence claims against pharmacies to move forward where they are clearly and explicitly premised on the pharmacy's failure to exercise due care in identifying "obvious flaws" in a prescription as written at the time it is filled. *Bustetter*, 919 F. Supp. 2d at 1293 (analyzing case law regarding the viability of negligence claims against pharmacies and noting that only claims involving "obvious flaws with the prescriptions" have been permitted to survive Rule 12 analysis); *see, e.g., Arrington v. Walgreen Co.*, 664 F. Supp. 2d 1230 (M.D. Fla. 2009) (Presnell, J.) (denying motion to dismiss and permitting claim to proceed where plaintiff specifically alleged that the plaintiff had a known allergy to the drug prescribed and that the pharmacy, despite knowing of the allergy, dispensed the drug to the plaintiff); *Dee v. Walmart Stores, Inc.*, 878 So. 2d 426, 427 (Fla. Dist. Ct. App. 2004) (finding pharmacy could be negligent for filling a prescription for fentanyl "which [was] unreasonable on its face" because it did not contain a time limit for filling or using the prescription, and because the decedent continued to fill the prescription several months later and died as a result of toxic overexposure to fentanyl).

Plaintiff's claims in this case bear no resemblance to these limited exceptions. Here, Plaintiff does not plead that CVS misfilled Decedent's prescription, that Decedent had a known allergy to losartan, or that there was anything inherently suspicious or facially deficient about the prescription written

by Decedent's physician.  Rather, Plaintiff pleads that this was Decedent's first ever fill of losartan, which was prescribed to her by her physician; that the losartan dispensed to Decedent was accompanied by a latent defect—here, an allegedly undisclosed risk; and that CVS should have tested for and/or warned of that risk. Compl. ¶¶ 17-19, 27, 92. Plaintiff's claims are the very sort of claims that have been dismissed because the pharmacy owes no duty to warn of such risks and, thus, cannot be found negligent for failure to do so. *Bustetter*, 919 F. Supp. 2d at 1293-94.

Because there is no basis in Florida law for holding CVS negligent based on the facts alleged by the Plaintiff, the Court should dismiss Plaintiff's negligence claim against CVS (Count VII) with prejudice.

## C.   The Court should dismiss Count VIII because Plaintiff cannot sustain an independent wrongful death action against CVS.

Finally, Plaintiff also brings a wrongful death claim against CVS. The Florida Wrongful Death Act provides a cause of action "[w]hen the death of a person is caused by the wrongful act . . . of any person, . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued[.]" Fla. Stat. § 768.19. In other words, a wrongful death action is derivative of the decedent's right, while living, to recover for a personal injury. *See Judge v. American Motors Corp.*, 908 F.2d 1565, 1578 n.5 (11th Cir. 1990) (quoting *Celotex Corp. v. Meehan*, 523 So. 2d 141, 147 (Fla. 1988)); *see also Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 760 (Fla. 2013) ("[T]he language of the Act makes

clear a cause of action for wrongful death that is predicated on the decedent's entitlement to 'maintain an action and recover damages if death had not ensued.'") (quoting *Toombs v. Alamo Rent-A-Car*, 833 So. 2d 109, 118 (Fla. 1990)).

CVS has demonstrated that Plaintiff cannot support her claims of strict liability and negligence, both under Florida law and federal preemption law, such that the derivative wrongful death claim necessarily fails on the same grounds. *Cf. In re Zantac*, 2020 WL 7864585, at *22 (dismissing plaintiffs' derivative claims of wrongful death after dismissing all underlying claims against defendants). If the Decedent had no right of action in life, her survivors cannot now sustain an independent wrongful death action. *See Laizure*, 109 So. 3d at 760. In fact, "[n]o Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered." *Id.* (internal quotation omitted).

Because the Plaintiff's underlying claims are subject to dismissal, the derivative claim of wrongful death against CVS should also be dismissed.

## CONCLUSION

Plaintiff fails to state a viable strict liability or negligence claim against CVS under Florida law, and her claims also conflict with federal law such that they are preempted. Without a valid underlying claim to rely on, Plaintiff's wrongful death claim must also be dismissed.

CVS respectfully requests the Court enter judgment in its favor of CVS, dismiss the Plaintiff's Complaint with prejudice, and enter all other just and proper relief.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(h), a request for oral argument has been submitted contemporaneously with the filing of this motion.

March 30, 2021                                    Respectfully submitted,

**BARNES & THORNBURG LLP**
4540 PGA Blvd., Ste. 208
Palm Beach Gardens, Florida 33418
Phone: (561) 473-7560
Fax: (561) 473-7561

BY:          **/s/ Robert C. Folland**
ROBERT C. FOLLAND
Florida Bar No. 1007951
Email: rob.folland@btlaw.com

ATTORNEY FOR DEFENDANT CVS
PHARMACY, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of March, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will serve notice on all parties of record:

Kyle A. Diamantas, Esq.
Florida Bar No. 106916
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Sun Trust Center
200 South Orange Avenue
P.O. Box 1549
Orlando, Florida 32802-1549
Telephone: (407) 422-6600
Fax: (407) 841-0325
Email: kdiamantas@bakerdonelson.com

Jessica M. Heinz, Esq. (*pro hac vice*)
PA Bar No. 206188
Ernest F. Koschineg, Esq.
PA Bar No. 83350
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
Telephone: (610) 567-0700
Fax: (610) 567-0712
Email: jheinz@c-wlaw.com
ekoschineg@c-wlaw.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

Karl F. Pansler, Esq.
Florida Bar No. 722618
Christopher Ison
Florida Bar No. 72552
**PANSLER LAW FIRM**
223 North Florida Avenue
Lakeland, Florida 33801
Telephone: (863) 683-7500
Fax: (863) 284-0774
Email: karl@pansler.com
christopher@pansler.com

*Counsel for Plaintiff*

s/ Robert C. Folland
ROBERT C. FOLLAND